IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
RAFAELA O. GUILLEN,            )
                               )
            Plaintiff,         )
                               )
vs.                            )     Case No. 08-4054-JAR
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
            Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On July 5, 2007, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 19-28). Plaintiff alleges that she has been disabled since June 6, 2005 (R. at 19). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 21). At step one, the ALJ determined that plaintiff

has not performed substantial gainful activity since June 6, 2005, the alleged onset date of disability (R. at 21). At step two, the ALJ found that plaintiff had the following severe impairments: lumbar and cervical disc anomalies without radiculopathy, left wrist degenerative findings with proposed carpal tunnel, some degenerative shoulder findings on the left with possible fibromyalgia (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21). After determining plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 26). At step five, the ALJ determined that plaintiff could perform other jobs which exist in significant numbers in the national economy (R. at 27). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err by failing to adequately explain his resolution of the conflicts between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT)?**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT (including its companion publication, the

Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2.

Under the section "Explaining the Resolution," SSR 00-4p states the following:

> When vocational evidence provided by a VE or
> VS [vocational specialist] is not consistent
> with information in the DOT, the adjudicator
> must resolve this conflict before relying on
> the VE or VS evidence to support a
> determination or decision that the individual
> is or is not disabled. **The adjudicator will
> explain in the determination or decision how**

6

> **he or she resolved the conflict. The
> adjudicator must explain the resolution of
> the conflict irrespective of how the conflict
> was identified.**

SSR 00-4p, 2000 WL 1898704 at *4 (emphasis added).

At the hearing, the VE was presented with plaintiff's physical limitations (R. at 362-363, 368). With those limitations, the VE testified that plaintiff could perform the following jobs: (1), inspector of plastics products (DOT 559.687-074), (2) bonder, semi-conductor (DOT 726.685-066), and (3) surveillance system monitor (DOT 379.367-010) (R. at 367-369).[1]

The VE testified that his testimony was consistent with the DOT (R. at 369). The VE was then asked by plaintiff's counsel to assume a person with a 3rd grade education, with no ability to read and write English, and very basic math skills (R. at 370).[2] The VE testified that if plaintiff had no ability to communicate in English, all work, including the three jobs identified above, would be precluded according to the DOT (R. at 370-372).

---

[1] The VE had identified a 4th job, that of protective clothing issuer, when only some of the physical limitations were provided to him (R. at 365); however, when the additional limitations of the need to alternate sitting and standing were added, this position was eliminated by the VE (R. at 368).

[2] At the hearing, plaintiff testified that she had completed the 3rd grade in school, could read a little in Spanish, and could not read or write in English. She also indicated that she could only do addition, but could not do subtraction or division (R. at 341-342). Plaintiff does not speak English (R. at 174); thus, an interpreter was used to communicate with the plaintiff (R. at 174, 334). Defendant does not dispute the assertion that plaintiff cannot communicate in English.

The ALJ then further questioned the VE on this issue (given the somewhat confusing nature of the questioning, it is quoted below in full):

> REEXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:
>
> Q Your, your response to Counsel's question concerning literacy, and or communication skills stated that there would be no jobs. What's the difference, what is the difference between these positions that could be done by a single person with one arm usage as to opposed to a person doing jobs such as the Claimant has done in the past with, in the economy that with the primary distinction being that, that this person had 2 arms as opposed to the only 1 arm in the hypothetical? That would make the, the ability to converse in, in English so, so crucial that it, no jobs existed?
>
> A No, Sir, I, I, I did not mean to imply no jobs exist. I meant to imply that based upon the DOT, and the scale of general education development, identified within the DOT, it has a minimum that's in the SVP of 1.
>
> Q I'm, I --
>
> A I can --
>
> Q I'm not again saying, that I just wanted to get you back to, the, the point was that there was only one of those where you actually injected the ability to communicate in English as a component in your answer. The other, you did, did you not, include the, didn't preclude the possibility of, of --and it's not that the Regulations don't recognize that English being the classic English speaking is significant, but it's at a age or and a kind of matrix of age and lifting level that's substantially restricted.  I didn't even include a hypothetical at that level, in fact.

A No, Sir, you did not. And from --

Q Okay.

A --from experience, I can tell you, there are numerous positions that do not require English, such as the visual inspection position doesn't necessarily once it's --that's position of en-visually inspecting for flags and discarding those that simply do not meet conformity. Consequently, it, they have dual language supervisors that work with individuals in those cases.

Q So, so, you're changing your response to Counsels question wherein you indicated that possibly these 4 jobs would be precluded to indicate that if one is conversing in, in a native language other than English, perhaps that wouldn't preclude those jobs then, is that what you're saying?

A No, Judge, I --they would not preclude those jobs, because there are jobs available within each the local, State and national economies that do allow for non-English speaking-

Q Right, well, and the, the DOT would not indicate that they-you, your, your response as I understood you to Counsel's question was that the DOTs have not precluded these jobs. Are you saying now that that your answer shouldn't be understood in that fashion, then?

A As it's stated in the DOT, it does state a symbol for, like an example being, under language (INAUDIBLE) -

Q I, I, I don't want you --I don't, I'm, I'm just trying to get you to clarify, trying to clarify your answer, that's all.

ATTY: I, I think you're trying to rehabilitate his answer. I might note that for the record.

9

ALJ: Well, certainly.

ATTY: The DOT, if he read it --

ALJ: Counsel, just pull off. I'll give you an opportunity to close here in just a moment.

BY ADMINISTRATIVE LAW JUDGE:

A Judge, if I could clarify?

Q Well, I, I, I --that's, you've answered adequately. I, I just thought perhaps, that there might have been either a, a misconstruing of the, of the hypothetical question or otherwise some -- and, and if in fact there, there's a dis-junct between the DOT and, and the Regulations, I need to know that.

This is the first time I had ever been in, in any way posed as, as, conclusive as you had stated it to be, though, that no non-English speaking capability or inability to communicate in English as being apparently significant, but as I understand your answer to my question, that's not really the case, then, is that right.

A No, no, Judge, it is not the case. There are a multitude of individuals non-speaking, non-English speaking that are employed.

Q We understand that, given the current national controversy. Okay.

A Yes, Sir.

Q Okay, and, but the specific question was as to these 4 jobs you cited, is this, are these in among that category or are they among jobs where English communication is required?

A The Surveillance System Monitor because of the need to contact local Law Enforcement.

Q Okay.

>     A  Would be precluded unless there were a bi-lingual individuals which in -
>
>     Q  Well, then --
>
>     A  --in those areas, they would have bi-lingual individuals as dispatchers.
>
>     Q  Okay.
>
>     A  And I'm sorry, I did not mean to make confusion.
>
>     Q  Okay, that's fine.

(R. at 374-377).

In his decision, the ALJ stated that the VE testified that given plaintiff's age, education, work experience, and RFC, he could perform the 3 jobs of plastic production inspector, a bonder semi-conductor, and a surveillance system monitor. The ALJ stated that the VE's testimony was consistent with the information contained in the DOT. Based on this testimony, the ALJ concluded that plaintiff was not disabled because he could perform work that exists in significant numbers in the national economy (R. at 27).

Plaintiff argues that there was a clear conflict between the VE's testimony and the DOT, and that the ALJ failed to explain in his decision how he resolved the conflict, as required by SSR 00-4p. Defendant does not dispute that there was a conflict between the VE's testimony and the DOT, but argues that the ALJ properly resolved the conflict between the DOT and the VE's testimony regarding plaintiff's ability to perform other work in the

national economy.

    Defendant summarized the VE's testimony regarding plaintiff's ability to work in light of lack of ability to communicate in English as follows:

> Plaintiff's attorney then asked the vocational expert whether the hypothetical claimant could work as a surveillance-system monitor if she had a third-grade education in Mexico, no ability to read or write in English, and only very basic math skills (Tr. 370). **The vocational expert testified that the complete inability to read or write in English would preclude all work as defined in the DOT** (Tr. 370-72)...
>
> The ALJ then inquired further with the vocational expert regarding his testimony that an individual would need the ability to communicate in English to perform any work (Tr. 374). **The vocational expert explained that, according to the DOT, the complete inability to communicate in English would preclude all work** (Tr. 374). **The vocational expert then clarified, however, that based on his experience, the inability to communicate in English did not preclude all work, and that every local, state, and national economy had jobs that could be performed by an individual who could not communicate in English** (Tr. 375). The vocational expert then testified that, of the four jobs he had previously identified, i.e., protective clothing issuer, plastic products inspector, bonder/semiconductor, and surveillance-system monitor, only work as a surveillance-system monitor would be precluded because of the need to contact law enforcement, unless the locale had bilingual police dispatchers (Tr. 376-77).

(Doc. 21 at 4, emphasis added).  Thus, according to the summary of testimony by the defendant, the VE testified that the complete

12

inability to communicate in English would preclude all work as defined in the DOT; however, the VE further testified that, based on his experience, the inability to communicate in English did not preclude all work, and that every local, state and national economy had jobs that could be performed by an individual who could not communicate in English.

Later in their brief, defendant, citing to R. at 374-377, stated that "[c]ontrary to Plaintiff's argument, the ALJ properly found Plaintiff could perform other work despite her inability to communicate in English" (Doc. 21 at 8). However, the ALJ made no such finding in this portion (or any other portion) of the hearing transcript; the ALJ was simply asking questions of the VE regarding plaintiff's ability to work despite the inability to communicate in English and the conflict, if any, with the DOT.

In his decision, the ALJ stated that plaintiff could perform the jobs of plastic production inspector, a bonder semi-conductor, and a surveillance system monitor. The ALJ then found that the VE's testimony that plaintiff could perform such work was consistent with the DOT.[3] That finding is clearly erroneous. Defendant's own summary of the VE testimony was that the VE testified that, <u>according to the DOT</u>, the complete inability to communicate in English would preclude all work. The VE then

---

[3] The ALJ also listed the number of each of those jobs in the area, state and nation (R. at 27). Those numbers match the testimony of the VE (R. at 367-368).

13

clarified, that, <u>based on his experience</u>, the inability to communicate in English did not preclude all work, and that plaintiff could still perform the jobs as plastic products inspector and bonder, semi-conductor (Doc. 21 at 4). Thus, there was a clear conflict between the DOT and the VE testimony. In addition, according to SSR 00-4p, the ALJ "will explain in the determination or decision how he or she resolved the conflict." 2000 WL 1898704 at *4. The ALJ clearly erred by failing to explain in his decision how he resolved the conflict.

Furthermore, in his decision, the ALJ found that plaintiff could perform the position of a surveillance system monitor (with 140 in the area, 870 in the state, and 150,000 in the nation) even though the VE had testified that plaintiff, because of her inability to communicate in English, could not perform this job unless there were bi-lingual individuals as dispatchers (R. at 377). Defendant acknowledged this fact in his brief (Doc. 21 at 4, 10). There was no testimony or evidence regarding the number of such jobs that had bi-lingual individuals as dispatchers. The number of these jobs provided by the VE (R. at 367-368), which was adopted by the ALJ in his decision (R. at 27), does not reflect how many, if any, of these jobs had bi-lingual individuals as dispatchers. Therefore, the number of such jobs that the ALJ asserted are available in the economy which plaintiff can perform is clearly not supported by substantial

evidence.

The ALJ also adopted in his decision the testimony of the VE regarding the numbers of the other two jobs which are available in the economy (27, 367). However, the numbers of those jobs provided by the VE preceded the discussion of the impact of plaintiff's inability to communicate in English. Once this limitation was set forth, the VE testified that there were jobs available for non-English speaking persons (R. at 375). The VE later testified that only the surveillance system monitor job would be precluded in the absence of bi-lingual dispatchers; thus, the jobs of plastic production inspector and bonder semi-conductor would remain as jobs that plaintiff could perform given her inability to communicate in English (R. at 377). However, the VE provided no figures on the numbers of such jobs <u>that would be available for a person who could not communicate in English</u>. In the absence of any evidence of the numbers of such positions that are available in the local, state or national economies, the court finds that the determination of the ALJ that work exists in significant numbers in the national economy that plaintiff can perform is not supported by substantial evidence.

This case shall therefore be remanded in order for the ALJ to fully comply with SSR 00-4p. Specifically, the ALJ shall discuss in his decision any conflict between the VE's testimony and the DOT, and explain in his decision how he resolved the

conflict.  If the ALJ adopts testimony of the VE which conflicts with the DOT, the ALJ must determine if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than the DOT information.  Furthermore, the ALJ shall determine if a significant number of jobs exist in the national economy that plaintiff can perform in light of her inability to communicate in English.

Plaintiff also argues that plaintiff's 3rd grade education conflicts with the requirements of the three jobs identified by the VE and the ALJ as jobs that plaintiff can perform.  However, unlike plaintiff's inability to communicate in English, the VE did not testify that, according to the DOT, plaintiff would be precluded from performing the jobs identified by the VE because of her 3rd grade education.  Furthermore, the court does not find any clear discrepancies between a 3rd grade education and the requirements for the 3 jobs, as set forth in the DOT.  Bonder, Semiconductor (DOT 726.685-066), 1991 WL 679631; Inspector and Hand Packager (DOT 559.687-074), 1991 WL 683797; Surveillance-System Monitor (DOT 379.367-010), 1991 WL 673244.  The court therefore finds no clear conflict on this issue that needed to be addressed by the ALJ.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 27, 2009.

                                            s/Donald W. Bostwick
                                            DONALD W. BOSTWICK
                                            United States Magistrate Judge